Montgomery County District Court
***EFILED***
LexisNexis Transaction ID: 26838793
Date: Aug 28 2009 4:28PM
Barbara Adamick, Clerk

No. 09-01-00563

| | | |
|---|---|---|
| AUER CORPORATION, | § | IN THE 9TH JUDICIAL DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | IN AND FOR |
| | § | |
| DECATUR HOSPITALITY, INC., | § | |
| | § | |
| Defendant. | § | MONTGOMERY COUNTY, TEXAS |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

**Defendant refers the court's attention to its previously filed Motion for
Continuance of Plaintiff's Motion for Partial Summary Judgment Setting which
is incorporated by reference as if set forth fully herein. Defendant's continuance
motion is set to be heard by submission at 9:00 a.m. on Friday, August 28, 2009, and
which, as of the filing of this response, has not been ruled on by the court.
This response is being filed even though the witnesses necessary to respond are
still unavailable as set out more fully in Defendant's continuance motion.**

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Comes now Decatur Hospitality, Inc., (hereinafter "Defendant" or "Decatur"), the

Defendant in the above-entitled and numbered cause, and files this, its Response to the Motion

for Partial Summary Judgment filed by Auer Corporation (hereinafter "Plaintiff" or "Auer") and

would show the Honorable Court as follows:

### A. FACTUAL BACKGROUND

1.      Defendant owns a hotel in Decatur, Texas. Plaintiff was hired by Defendant to

construct the hotel as general contractor.

2.     On or about March 1, 2008, Plaintiff and Defendant entered into that certain AIA Standard Form of Agreement Between Owner and Contractor ("Contract"). Under the Contract, Defendant was to construct a hotel for Plaintiff in Decatur, Texas, as general contractor.

3.     A dispute arose between the parties over the construction of the hotel, Plaintiff filed this action, and Defendant answered and filed a counter-claim for breach of contract against Plaintiff[1].

4.     Plaintiff filed its Motion for Partial Summary Judgment in this action asking the Court to declare that:

   A.     Defendant "is barred from complaining about the quality of the construction, the amounts charged by hour in its draw requests, whether construction complied with the plans and specifications, or any other aspect of the construction." Plaintiff has claimed in its Motion that Defendant is barred from these actions because of Defendant's acceptance of the work performed by Plaintiff under the Contract.

   B.     Defendant was "legally obligated to withhold and to maintain an amount of ten per cent of the contract price or the value of the work done as retainage during the entire project" under Section 53.101 et seq. of the Texas Property Code.

5.     In support of Plaintiff's Motion, Plaintiff offers the affidavit of Plaintiff's principal, the Contract, and certificates for payment on the project[2].

6.     The Contract and certificates for payment relied upon by Plaintiff in its Motion for Partial Summary Judgment specifically provide that the issuance of a certificate for payment and payment of any amount under the Contract itself is **NOT** acceptance of the work under the

---

[1] Subject to Defendant's Motion to Transfer Venue.
[2] Actually, Plaintiff attached a contract between Plaintiff and Borger Properties, Inc. that relates to a different project in Borger, Texas, and did not attach the Contract and certificates for payment on this project. In fairness, Plaintiff attached the Contract and Certificates for Payment on this project in the Borger suit, pending in this Court as Cause No. 09-01-00565.

Contract. As such, Plaintiff has failed to establish as a matter of law that it is entitled to relief on the first point of its Motion for Summary Judgment.

7.      Plaintiff's request for relief under Section 53.101 *et seq.* of the Texas Property Code is misplaced.   Section 53.101 of the Texas Property Code is intended to protect subcontractors and suppliers from nonpayment, not general contractors.  Further, there is no requirement in those sections of the Property Code that a separate account be maintained for the retainage.  Further, Section 53.101(a) requires the Owner to retain ten percent (10%) of the contract price or ten percent (10%) of the value of the work, measured by the proportion that the word done bears to the work to be done, but Plaintiff has presented no evidence what proportion that the work done on the Contract bears to the work to be done.

8.      Therefore, Plaintiff is not entitled to relief under its second point in its Motion for Partial Summary Judgment, as it has not established that there is no material dispute of fact and that it is entitled to judgment as a matter of law.

9.      The following provisions make up the indicated section of the General Conditions of the Contract between Plaintiff and Defendant:

A.      Section 9.4.2

The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents. *The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect.* The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified.

*However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the contractor has used money previously paid on account of the Contract Sum.* (Emphasis added.)

B.      Section 9.5.1

The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions...

C.      Section 9.6.6

A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

D.      Section 13.4.2

No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach there under (sic), except as may be specifically agreed in writing.

E.      Additionally, the AIA Application and Certificate for Payment form on

which Plaintiff relies for its claims that Defendant has waived any right to contest the

value of the work performed by Plaintiff or whether the construction work conformed

with the Contract Documents provides specifically as follows:

Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

## B. OBJECTIONS TO PLAINTIFF'S SUMMARY JUDGMENT "PROOF"

10.    In its Motion, Plaintiff attaches an affidavit, a contract, and certificates for payment as summary judgment "evidence". Defendant objects to the evidence offered as detailed in the paragraphs below.

11.    Defendant objects to the entirety of the affidavit of Raymond Teague offered by Plaintiff in support of its Motion for Partial Summary Judgment in that a proper foundation has not been laid showing Mr. Teague to be qualified as an expert to give the expert opinions offered in his affidavit.

12.    Defendant objects to the following paragraphs in the affidavit of Raymond Teague offered by Plaintiff in support of its Motion for Partial Summary Judgment because the contents of the following paragraphs are conclusory statements made without providing any underlying or basis facts:

Paragraphs 2; 3; 7(c); 7(d); 7(e); 7(f); 7(h); 7(i); 7(j); 7(k); 7(l); 7(m); 7(n); 7(o); 7(s); and 7(t).

13.    Defendant objects to the following paragraphs in the affidavit of Raymond Teague offered by Plaintiff in support of its Motion for Partial Summary Judgment because the contents of the following paragraphs are conclusions or opinions of law for which Mr. Teague has not shown himself qualified to make and for which there is no basis:

Paragraphs 5; 7(b); 7(c); 7(d); 7(f); 7(h); 7(j); 7(k); 7(n); 7(o); 7(q); 7(r); 7(s); and 7(t).

14.    Defendant objects to the following paragraphs in the affidavit of Raymond Teague offered by Plaintiff in support of its Motion for Partial Summary Judgment because the statements contained in the following paragraphs are not relevant to any fact material to Plaintiff's Motion for Partial Summary Judgment:

Paragraphs 7(f); 7(g); 7(l); and 7(m).

15.     Defendant objects to the following paragraphs in the affidavit of Raymond Teague offered by Plaintiff in support of its Motion for Partial Summary Judgment in that the statements contained therein are hearsay:

Paragraphs 7(g); 7(h); and 7(j).

16.     Defendant objects to the statements contained in the following paragraphs of the affidavit of Raymond Teague offered in support of Plaintiff's Motion for Partial Summary Judgment in that the statements are based on information or belief and are not based on the personal knowledge of the affiant:

Paragraphs 5; 6; 7(h); and 7(q).

17.     Defendant objects to the attachment of the AIA Standard Form of Agreement Between Owner and Contractor between Borger Properties, Inc. and Plaintiff in that the Borger Properties, Inc. contract has nothing to do with the construction of the hotel in Decatur, Texas, made the basis of Plaintiff's Motion for Partial Summary Judgment. All "evidence" attached to Plaintiff's Motion for Partial Summary Judgment, aside from the affidavit of Raymond Teague, pertains to the Borger Properties, Inc., contract and not the Contract for the construction of the hotel in Decatur, Texas, made the basis of this suit. As such, all documents are irrelevant to the Motion at hand and this suit.

18.     The affidavit of Raymond Teague is no evidence at all of the items required to entitle Plaintiff to the relief requested, let alone conclusive proof entitling Plaintiff to relief as a matter of law. Defendant prays that the Court sustain these objections and not consider any objectionable evidence offered by Plaintiff in support of its Motion.

## C. ARGUMENTS AND AUTHORITIES

19.     A nonmovant in a traditional summary judgment proceeding is not required to produce summary judgment evidence until after the movant establishes its entitlement to summary judgment as a matter of law. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989). In deciding whether there is a disputed issue of material fact that precludes summary judgment, the court takes as true all evidence favorable to the nonmovant. *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002). The court must view the evidence in the light most favorable to the nonmovant and must indulge every reasonable inference and resolve all doubts in favor of the nonmovant. *Id.*

**Plaintiff's First Point Cannot be Granted: Contract Provides Payment is Not Waiver**

20.     The court should deny Plaintiff's first point in its motion because Plaintiff did not prove as a matter of law that Defendant has waived any rights under the Contract, that Defendant has accepted and approved the work performed by Plaintiff, or that Defendant made any representations to Plaintiff that Plaintiff was entitled to rely on[3].

21.     Specifically, the Contract provides that the issuance of a certificate for payment and even payment itself is not acceptance of the work performed by Plaintiff under the Contract. *See Paragraph 9, above.*

22.     Likewise, the signed certificates for payment and payment of any draws to Plaintiff by Defendant are explicitly not waivers of any rights, acceptance of any work, or waiver of any right by Defendant to claim breach of contract of Plaintiff. *See Paragraph 9, above.*

---

[3] In fact, the "evidence" offered by Plaintiff in support of its position that Defendant has accepted the construction work is no evidence at all in light of Paragraph 9, above.

23.     Similarly, according to the Certificates for Payment relied on by Plaintiff in its motion, no action or failure to act by Defendant is a waiver of a right or approval of any breach of contract *unless explicitly set out as such in writing.   See Paragraph 9, above.*

24.     Plaintiff has offered no writings that support its position that Defendant has waived any rights under the Contract because the Certificates for Payment, and any payments themselves do not constitute waivers of any rights or acceptance of Plaintiff's work under the Contract.

25.     As such, there is no evidence before the Court establishing as a matter of law that Defendant has waived any right to assert that the construction by Plaintiff was not carried out in accordance with the Contract or that precludes Defendant from asserting that it has not accepted the construction performed by Plaintiff.

26.     Thus, summary judgment on Plaintiff's first point in its Motion for Partial Summary Judgment cannot be granted.

**Plaintiff's Second Point Cannot be Granted: No Proof of Amount of Required Retainage**

27.     Plaintiff's second point in its Motion for Partial Summary Judgment seeks a declaration from the Court that "Defendant is and was obligated to maintain a retainage account in accordance with state law in the amount of at least $$200,536.90 (sic) or such other amount as the Court may determine."

28.     The Court should deny Plaintiff's Motion on this point because Plaintiff did not prove as a matter of law what amount must have been retained by Defendant and because Chapter 53 of the Texas Property Code does not require Defendant to maintain any "account" for the retainage.

29.     Specifically, any retainage that is required by statute under Section 53.101 of the Texas Property Code is measured as ten percent (10%) of the value of the work done, not necessarily ten percent (10%) of the amounts that appear on any certificate for payment. Plaintiff has relied solely on the Certificates of Payment as proof of the amount of required retainage. However, as set out above in Paragraph 9, the certificates for payment are not final, may be modified or rescinded by the Architect, are not to be considered acceptance of the work performed, and are subject to subsequent tests upon substantial completion.

30.     Thus, the certificates are no evidence at all of the value of the work done by Plaintiff, and the retainage required cannot be determined as a matter of law. Plaintiff's affidavit is also no evidence at all of the proper amount required to be retained by Defendant. As such, Plaintiff has offered no evidence at all of its entitlement to summary judgment on its second point, let alone proven as a matter of law that it is entitled to such relief.

31.     Further, in its second point, Plaintiff seeks partial summary judgment that Defendant was required to maintain a separate "retainage account" for the money required to be set aside by Chapter 53 of the Texas Property Code. Plaintiff has cited no law and has not provided any evidence, let alone shown as a matter of law, that Defendant is required to maintain a separate "retainage account" for any retained funds.

32.     Additionally, Section 53.101 *et seq.* of the Texas Property code was a statute intended to benefit subcontractors and materialmen, not general contractors. Summary judgment in favor of Plaintiff based on a statute that has no provisions for relief for general contractors is improper.

33.     Summary judgment in Plaintiff's favor on its second point cannot be granted.

## D. NO ADEQUATE TIME FOR DISCOVERY

34.     The Court should deny Plaintiff's Motion for Partial Summary Judgment because there has been no discovery performed in this matter.

35.     As more specifically set out in the affidavit attached to Defendant's Motion for Continuance of the setting of this Motion for Partial Summary Judgment and Defendant's Motion to Consolidate, for Continuance and to Abate on file, there are no less than seven lawsuits pending between Plaintiff and various entities owned and controlled by the principal of Defendant in this matter.  Since each suit was filed, the parties filed and argued motions to transfer venue, and just recently, all but one case has been transferred to Montgomery County, Texas.  The most recent order transferring venue was just rendered on August 20, 2009.  Cases that have been ordered transferred have yet to be transferred, and transfer of the various cases to Montgomery County, Texas, has made consolidation of these matters appropriate.

36.     Defendant has filed a motion to consolidate these various matters, after which, discovery is intended to be performed.

37.     The Court should refuse Plaintiff's application for partial summary judgment to allow discovery by the parties to take place first.

## E. CONCLUSION

38.     As established by this response, Defendant has shown that Plaintiff is not entitled to the relief requested in Plaintiff's Motion for Partial Summary Judgment and that summary judgment is not appropriate.  Plaintiff has offered no summary judgment evidence entitling it to the relief requested.  Additionally, Defendant has raised genuine issues of material fact on each issue raised by Plaintiff in its Motion.

## F. SUMMARY JUDGMENT EVIDENCE

39.    Defendant's Response depends on the summary judgment evidence attached to Plaintiff's Motion to which reference is made. Defendant also asks the Court to take judicial notice of the Court's file.

## G. PRAYER

40.    WHEREFORE, PREMISES CONSIDERED Defendant requests that the Court deny Plaintiff's Motion for Partial Summary Judgment and for such other and further relief to which Defendant may be justly entitled either at law or in equity, general or special.

Respectfully submitted,

W. Wade Arnold
State Bar No. 00783561
John B. Atkins
State Bar No. 24050237
UNDERWOOD, WILSON, BERRY, STEIN & JOHNSON, P.C.
P. O. Box 9158
Amarillo, Texas 79105-9158
(806) 379-0313
(806) 349-9475 [fax]

By: _____
W. Wade Arnold/John B. Atkins

**COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of August, 2009, a true and correct copy of the foregoing instrument was delivered via facsimile as follows:

*Via Facsimile (713) 481-8746*
Ms. Donna Kline
Attorney at Law
16144 Bethel Road
Montgomery, TX 77356

_____
W. Wade Arnold/John B. Atkins

CAUSE NO. 09-01-00563

| | | |
|---|---|---|
| AUER CORPORATION, | § § § | IN THE DISTRICT COURT |
| PLAINTIFF | § § | |
| V. | § | 9ᵗʰ JUDICIAL DISTRICT |
| DECATUR HOSPITALITY, INC. | § § § | |
| DEFENDANT | § | MONTGOMERY COUNTY, TEXAS |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW, AUER CORPORATION, Defendant, and files this its Brief in Support of Motion for Partial Summary Judgment and would respectfully show unto this honorable Court as follows:

### I.   INTRODUCTION

This case is a contract dispute about the construction of a hotel in Decatur, Texas. Auer Corporation ("Auer") was the general contractor, and Decatur Hospitality owns the hotel.

This motion seeks partial summary judgment on issues of waiver and retainage. It turns on black letter rules of law applied to straightforward facts. The standard for a traditional motion for summary judgment under TEX. R. CIV. PRO. 166a is well known to this Court.

Plaintiff's first point is that Defendant Decatur Hospitality's is barred from taking any position inconsistent with its architect's approval of the construction and the payments made to Auer.

Plaintiff's second point is that Decatur Hospitality was legally obligated to an amount of ten per cent of the contract price or the value of the work done as retainage until completion of the project. Texas Property Code §53.101 and related provisions.

II.   FACTS[1]

On March 1, 2008, Decatur Hospitality and Auer Corporation entered into a contract for the construction of a Baymont Inn hotel in Decatur, Texas (the "Contract"). The contract price was $2,999,000.00.

The president of Decatur Hospitality is Mr. Harish Patel. Mr. Patel is a sophisticated businessman who is involved in a number of chain hotels in Texas. Specifically, he controls six corporations that entered into contracts with Auer Corporation. Auer agreed with various Patel companies to build seven hotels. All of these hotels are in West Texas. The Decatur Hospitality Baymont Inn was one of these hotels.

Auer Corporation went to work building the hotel in about June 2008.

The contract for the construction was prepared using a program licensed by the American Institute of Architects ("AIA"). The contract provided that interim payments would be made as the work progressed. The AIA program generates a monthly request for an interim payment based on information provided by the contractor (referred to in the Contract as a Contractor's Application for Payment but usually called a "draw request").[2] See Affidavit of Raymond Teague, paragraph q.

Each draw request has several components. It includes percentage estimates of the work done on various aspects of the construction, such as plumbing, framing, and so on. It includes an approximate accounting for the amounts paid or due to the subcontractors and suppliers in connection with these aspects of the work. Auer Corporation attached copies of invoices and

_____

[1] Plaintiff believes that most of the facts set forth herein are undisputed.

[2] Copies of selected pages of those draw requests are attached to the affidavit of Raymond Teague, attached to the Motion for Partial Summary Judgment and incorporated herein by reference, together with its exhibits.

partial lien releases from various subcontractors and suppliers relevant to the current stage of the project.

The key page for this motion is the summary page that summarizes the financial status of the project, including the percentage of various components of the hotel that had been completed and the amount that should be paid to the contractor. It contains the certifications of the architect and the contractor about those facts.

The architect for the hotel was Mr. Terry Brewer of Terry F. Brewer & Associates Architects, who is located in Duncanville, Texas. The architect is the owner's agent in connection with the project.

One of the architect's duties is to inspect the construction as it progressed. Mr. Brewer inspected the Decatur Baymont Inn project many times. Mr. Patel also inspected the project many times.

The Contract has four clauses about the architect's role that bear on this motion. These are the following:

> 4.2.1    The Architect will provide administration of the Contract and will be the Owner's representative during construction . . .
>
> 4.2.2. The Architect will visit the site at intervals appropriate to the stage of construction or as otherwise agreed with the owner, to become generally familiar with the progress and quality of the portion of the Work completed, and to determine in general if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents . . . .
>
> 4.2.3    On the basis of site visits, the Architect will keep the Owner reasonably informed about the progress and quality of the portion of the Work completed and report to the Owner (1) known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor, and (2) defects and deficiencies observed in the Work.  . . .

4.2.5   Based on the Architect's evaluations of the Contractor's Application for Payment, the Architect will review and certify the amounts due the Contractor.  . . ..

During the work on the Decatur Hospitality Baymont Inn hotel, Auer Corporation submitted several draw requests to Decatur Hospitality.  Mr. Brewer approved three of these draw requests in their entirety pursuant to paragraph 4.2.5 of the Contract.[1]  He signed on the AIA form request submitted by Auer Corporation.

The language of that approval is the following:

> In accordance with the contract documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information, and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

(Emphasis in original)

In other words, Mr. Brewer, as the agent of Decatur Hospitality, expressly agreed that the construction was satisfactory, that it had been done in accordance with the contract, and that Auer was entitled to be paid the amount requested in the draw request.  Moreover, he wrote a letter describing the work that had been completed and stating that the draw request was reasonable.  See Letter of Terry Brewer to Interstate Bank, dated September 9, 2008, and attached as Exhibit 6 to the Affidavit of Raymond Teague.

Mr. Brewer expressed some reservations on Draw Four.  He approved that request with reductions in some amounts, such as for the trash.  See Letter of Terry Brewer to Interstate Bank, dated October 24, 2008, and attached to the affidavit of Raymond Teague as part of Exhibit 7.  By that letter, he reduced the amount certified for approval by $58,300.00.

---

[1] Copies of the approval pages are attached to the affidavit of Raymond Teague.

He continued to make changes to Draws 5 and 6. See e.g. Letter of Terry Brewer to Interstate Bank dated October 28, 2008 and attached to Affidavit of Raymond Teague, as Exhibit 10.[*] As set forth below, Plaintiff contends that such partial approvals are also a waiver and estoppel, except, of course, for the items not approved.

Mr. Patel also approved the construction, as did various government inspectors and the construction lender. Affidavit of Raymond Teague, paragraphs c, g, and h;  Letter of Mark Marrs, Interstate Bank, to Raymond Teague, dated November 7, 2008, attached to Affidavit of Raymond Teague, as part of Exhibit 9. Plaintiff contends that Mr. Patel's approval is also a waiver and estoppel since he is the president of Decatur Hospitality.

The contract also refers to retainage of ten per cent of the amounts incurred for work by subcontractors and for supplies furnished by various suppliers, such as lumber companies. See e.g. paragraph 9.3.1 of the Contract attached to the Affidavit of Raymond Teague as Exhibit 2. What this means is that the owner of the construction project holds back ten per cent of the money that would otherwise be payable to the contractor.

All of the draw requests show the amount to be withheld as retainage. The architect's letter of October 24, 2008 to Interstate Bank says, "Please note that you are holding $200,536.90 as retainage." See Exhibit 10 to Affidavit of Raymond Teague, attached to the Motion for Summary Judgment.

III.    APPLICABLE LAW

Applicable Texas on these points clearly supports summary judgment on both points.

---

[*] The letter is dated October 28, 2008 but it contains internal references to receipt of Draw 6 in November and to the architect inspecting the project on December 3, 2008.

A. *Waiver, estoppel by contract, and estoppel in pais.*

Three separate rules of law show that Decatur Hospitality's actions preclude it from taking a position inconsistent with the approval signed by the architect. These are the doctrines of estoppel by contract, waiver, and estoppel in pais.

The doctrines of estoppel and waiver are related but not identical. Waiver, Tex. Jur. 3d §2; Estoppel, Tex.Jur.3d §5; Monumental Life Ins. Co. v. Hayes-Jenkins, 403 F3d 304 (5th Cir. 2005). For example, an insurance company's statements may be a waiver of its right to complain that the insured didn't pay the premium or it may be estopped to assert the failure of payment as a defense. Monumental Life, supra. All are primarily equitable doctrines based on the concept that a party should not be permitted to take a different position at trial from a stance taken earlier in the relationship between the parties.

The rules of estoppel and waiver apply in this case both to the issue of approval of the construction and to the issue of retainage. The reason is that the certificate signed by the architect approved both the construction and the accounting, which included retainage.

### 1. Waiver

Waiver is the intentional relinquishment of a known right. It closely resembles estoppel except that it is entirely the legal result of one party's actions. Indeed, "a valid waiver may be said to effectually estop one party from a claim against the other." Waiver, Tex. Jur. 3d §3 at 6. No reliance or other component is required. Johnson v. Structured Asset Serv., LLC, 148 SW 3d 711 (Tex. App.-Dallas 2004, no pet.).

Waiver results as a legal consequence from the unilateral act of the party against whom it operates. Monumental Life Ins. Co. v. Hayes-Jenkins, supra. In other words, waiver is an automatic legal result, and no action by the other party is required. Id. A waiver is not based on estoppel. Johnson v. Structured Asset Services, supra, at 722 -3.

The elements of waiver include: (1) an existing right; (2) the party's knowledge of that right; and (3) the actual intention to relinquish it, which may be inferred from conduct. ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. All of those elements are satisfied here. The contract conferred various rights, including a right to construction of adequate quality in conformance with the contract and the right to inspect the hotel for such conformity. The owner exercised those rights through its architect and its president. Affidavit of Raymond Teague and exhibits. The architect certified several times that he had inspected the project, that the construction conformed to the contract, and that the amount requested should be paid. The owner thereupon arranged for payment. These actions constitute a clear waiver of any right to complain later that the payment was excessive or the construction not satisfactory or the work not done.

The affirmative defense of waiver is established by showing party has expressly renounced a known right. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓'▓). In this case, the owner's agent repeatedly signed a document that accepted the work to date, stipulated that the work conformed to the contract, and agreed that the amount requested should be paid. Affidavit of Raymond Teague and attached exhibits. Nothing could be clearer as a waiver of the right to further challenge that work and the amount owing.

Moreover, the president of the hotel owner, Mr. Harish Patel, is a sophisticated businessman who controls several hotel properties. He also inspected the work at Decatur several times. He too approved the construction work. Affidavit of Raymond Teague, paragraphs e, h, and j. This conduct is inconsistent with an intent to later complain about the construction or to claim that some aspect of the construction specified in the draw request had

not been completed or that the amounts requested by Auer were not due. Waiver, Tex. Jur. 3d, §4 at 9.

The force of Mr. Brewer's approvals of the draw requests (and Mr. Patel's concurrence) as a clear waiver is shown by his later conduct in declining to approve some items of Draw Four. In that action, he showed exactly how the owner could exercise its rights to require compliance with the contract under any particular draw. His objections to Draw Four through Six make clear that his approval of Draws One through Three constituted a waiver of the right to make comparable objections.

In an analogous case, payment of periodic amounts on a pipeline construction contract was held to be a waiver. Anderson Dev. Corp. v. Coastal States Crude Gathering Co., 543 S.W.2d 402 (Tex. Civ. App. Houston [14th Dist.] 1976, writ ref'd). In that case, the parties followed an informal payment system where the owner inspected the property and prepared "certificates" from which the contractor prepared invoices. The owner paid all of the invoices except the last two. Id at 406. The court held that this conduct, together with the owner's use of the pipeline, waived the relevant contract provisions and indicated acceptance of the work.

The facts in the Anderson case parallel this case – Auer prepared a draw request that was approved by Decatur Hospitality's architect and then paid per his instructions. That conduct, as in Anderson, constitutes a waiver of any complaint about the amount due to be paid, the construction, or Auer's compliance with the contract. Id. at 406.

The issue of waiver becomes a question of law where the facts are undisputed or where the facts are so clear that there is no need for inference or argument. In re Shields, 190 S.W.3d 798 (Tex. App. [1 Pasp. 2006, mandamus den'd), Bott v. JF. Shea Co., 388 F.3d 530 (5th Cir 2004).

The facts here are undisputed or, in the alternative, established by incontrovertible facts. They clearly establish that Decatur waived any complaint about the quality of the construction, Auer's compliance with the contract, and the amounts charged as a matter of law.

## 2. Estoppel by contract

Two primary branches of the estoppel doctrine are estoppel by contract and estoppel in pais.[5]

Estoppel by contract, which is sometimes called "quasi-estoppel," is the equitable rule that a party may not assert a right inconsistent with a position previously taken. See Estoppel, Tex. Jur. 3d §2, at 669 et seq. citing inter alia ~~Haden Drilling & Mineral, Ltd. v. Occidental Permian Ltd., 225 S.W.3d 671 (Tex.App. [1 Tex] 2005, rev. den'd).~~

Here, Decatur Hospitality is estopped to change the position that it asserted repeatedly in the architect's certification of the draw requests.

Unlike estoppel in pais, estoppel by contract does not require any showing of detrimental reliance by the party asserting the estoppel.  Eckland Consultants, Inc. v. Ryder, Stillwell, Inc., 176 W.W.2d 80 (Tex.App.Houston [1st Dist.] 2004, no pet.)   It does not require that the other party's conduct involve fraud or misrepresentation. Id. In the Johnson case, the Fifth Circuit stated Texas law on estoppel by contract as follows:

> Estoppel by contract is a form of "quasi estoppel" based on the idea that a party to a contract will not be permitted to take a position inconsistent with its provisions, to the prejudice of another. Stevens v. State Farm Fire and Casualty Co., 929 S.W.2d 665, 672 (Tex.App.-Texarkana 1996, writ denied); Zieben v. Platt, 786 S.W.2d 797, 802(Tex.App.-Houston [14th Dist.] 1990, no writ); Hawn v. Hawn, 574 S.W.2d 883, 886(Tex.App.-Eastland 1978, writ ref'd n.r.e.). **The rule of estoppel by contract is not really one of estoppel, as estoppel in pais, rather it is just another way of saying that a party is bound by the terms of his**

---

[5] There is also a doctrine of estoppel by deed but it does not apply in this case. See Estoppel, Tex. Jur. 3d §2, at 668 – 669.

**contract** unless it is void, annulled, or set aside in some way.
<u>Stevens</u>, 929 S.W.2d at 672.
<u>Johnson v. Structured Asset Services</u>, supra at 721-2 (Emphasis supplied.)

Decatur Hospitality is estopped by its conduct in indicating that it approved of the

construction and payments.

### 3. Estoppel in pais

Decatur Hospitality's conduct in regard to the draw requests clearly creates a situation

where it would inequitable to permit Decatur Hospitality to repudiate those approvals.

> Estoppel in pais is sometimes called "equitable estoppel." It
> precludes a party from asserting a technical legal right when that
> party's own conduct makes it inequitable to permit the assertion.
> Dougherty v. Humphrey, 424 S.W.2d 620, 617 (Tex. Civ.
> App. 1896). Equitable estoppel arises where one party's
> representations (or course of dealing) leads the other party to
> reasonably believe that the first party does not intend to assert a
> right that he or she has and the other party relies on those
> statements. Estoppel arises where one party has been induced to
> change his position for the worse because of the conduct of another
> party. <u>Massachusetts Bonding & Ins. Co. v. Orkin Exterminating</u>
> <u>Co.</u>, 416 S.W.2d 396, 401 (Tex.1967). **The doctrine of estoppel**
> **can only be invoked where the conduct of one of the parties has**
> **been such as to induce action in reliance upon it, and where it**
> **would operate as a fraud upon the assured if they were**
> **afterwards allowed to disavow their conduct. Id.**
>
> <u>Johnson v. Structured Asset Services</u>, supra, at 721 (footnotes
> omitted and emphasis supplied).

It is an element of equitable estoppel that the party must intend that his or her statement

be relied on by the other party. Here, it is clear that Decatur Hospitality intended that Auer

Corporation rely on the certification of the draw request. The point of certification is to enable

the project to proceed.

Obviously, Auer did so rely – it continued to work on the construction of the hotel. Each

certification was intended to, and did, induce Auer to continue the construction project. Auer

could have greatly reduced its losses in this transaction if Decatur Hospitality had plainly stated in each draw request that it did not intend to make further payments or that it intended later to complain about some aspect of the construction.

Equally obviously, Auer's reliance was entirely reasonable. It had six other contracts with related companies. Mr. Teague knew that Mr. Patel had substantial control over Mr. Brewer; if Mr. Patel had wanted Mr. Brewer to find fault with the project, he presumably could have brought that about. Mr. Teague has 40 years experience in the hotel construction business, and he knew that the construction was in accordance with the contract. Therefore, he reasonably relied on Decatur Hospitality's formal agreement to that effect.

### B. Retainage

Texas law is clear that the owner of a construction project must retain ten percent of the contract price. TEX. PROP. CODE ANN. §§ 53.101 et seq. The actual statutory language is as follows:

> § 53.101. REQUIRED RETAINAGE. (a) During the progress of work under an original contract for which a mechanic's lien may be claimed and for 30 days after the work is completed, the owner shall
> retain:
> (1) 10 percent of the contract price of the work to the owner; or
> (2) 10 percent of the value of the work, measured by the proportion that the work done bears to the work to be done, using the contract price or, if there is no contract price, using the reasonable value of the completed work.
> (b) In this section, "owner" includes the owner's agent, trustee, or receiver.
>
> Acts 1983, 68th Leg., p. 3545, ch. 576, § 1, eff. Jan. 1, 1984. Amended by Acts 1989, 71st Leg., ch. 1138, § 15, eff. Sept. 1, 1989.

The application of this clear language to the present situation is not, however, transparent.

On the face of the Contract, the contract price is $2,999,000, and therefore, ten per cent is $299,000.00. However, the hotel has not been completed and, therefore, the final completion price is not known.

As to Auer, however, both the Contract documents and the statute provide for retention of 10 per cent of the contract price. Therefore, the logical amount to be retained is $299,000.00. At a minimum, Auer was entitled to have Decatur Hospitality withhold the amount specified in the last draw request that was paid. In fact, the architect's last letter to Interstate Bank refers to the fact that the bank was holding slightly over $200,000.00.

At least one lawsuit been filed, and numerous claims have been made on behalf of subcontractors and suppliers about this project.[4] Therefore, it is vital to Auer's interest that the retainage fund be established and maintained. The architect's letters refer to such a retainage account being held by Interstate Bank. Regardless of whether this evidence is sufficient to show that the account was actually established, the Court can determine that it ought to have been established and been maintained until the project is completed.

WHEREFORE defendant Auer Corporation respectfully requests that this Court grant the Motion for Partial Summary Judgment and enter a judgment to the effect that (1) Defendant accepted the construction on the Hotel Project up through December 3, 2008; (2) that Defendant is barred and estopped from asserting (a) that such construction was not carried out in a good and workmanlike manner; or (b) that such construction was not in accordance with the Contract, including the plans and specifications; or (c) that Auer was not entitled to be paid the amounts certified to be paid by Mr. Terry Brewer, the architect for Decatur Hospitality; or (d) that the

---

[4] That lawsuit is the following: *Elliot Electric Supply Group v. Decatur Hosp. and Auer Corporation*, Cause No. CV-09-05-350, pending in the 276th Judicial District, Wise County, Texas.

percentage of the work indicated by the Architect as completed had in fact been so completed; and (3) that Defendant is and was obligated to maintain a retainage account in accordance with state law in the amount of at least $299,000.00 or such other amount as the Court may determine.

Respectfully submitted,

Donna C. Kline
Attorney at Law
State Bar no. 11571600
16144 Bethel Road
Montgomery, Texas 77356
Tel: (281) 571-3972
Fax: (713) 481-8746
Email: donnakline@earthlink.net

ATTORNEY FOR PLAINTIFF
AUER CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above Brief in Support was served upon all counsel and parties of record pursuant to the Texas Rules of Civil Procedure on this August 28, 2009.

Donna C. Kline