

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

**ENTERED**
**10/04/2010**

| | | |
|---|---|---|
| **Borger Properties, Inc. et al.** | § | |
| | § | |
| | § | **Adversary Proceeding** |
| **v.** | § | **10-03171** |
| | § | |
| | § | |
| **Auer Corporation, et al.** | § | |

For the reasons set forth below, the Court grants Debtors' Motion to Transfer Venue and denies Auer Corporation's Motion for Mandatory Abstention and Remand.

## Jurisdiction

Jurisdiction in the United States District Court for the Southern District of Texas exists pursuant to 28 U.S.C. § 1334. The Court's authority over this case is derived from 28 U.S.C. § 157(a) and the District Court's standing order of reference. General Order 2005-12.

## Background

This adversary proceeding is part of a larger web of litigation that arose pre-petition involving Debtors, Debtor affiliates, Auer Corporation, and numerous subcontractors and suppliers who were hired by Auer. The Debtors, comprised of Borger Properties, Inc., Wheeler Hospitality, Inc., Borger Hospitality, Inc., and Decatur Hospitality, Inc., are four single asset real estate corporations engaged in the hotel industry. In 2007 and 2008, Debtors (along with two related entities also now in bankruptcy, Childress Hospitality, L.P., and Perryton Hospitality, Inc.) (collectively "Hotel Entities"), entered into contracts for Auer to construct seven hotels.[1] During the construction of the seven hotels, litigation arose in several Texas state courts,

---

[1] Except for Debtor Borger Hospitality, Inc., which owns two of the seven hotel properties, each one of the Hotel Entities owns one hotel property.

primarily in counties located within the Northern District of Texas.[2]    The majority of the litigation, over thirty lawsuits, involves unpaid subcontractors seeking to foreclose on mechanic's liens for unpaid labor and material provided to some or all of the Hotel Entities' properties.

The litigation also includes eight lawsuits filed between Auer and the Hotel Entities in various Texas state courts.[3]    Each case arose from disputes concerning the construction of one of the seven hotels.

Although variations exist, largely due to facts specific to each hotel property in question, the eight lawsuits between the Hotel Entities and Auer collectively involve the same fundamental issues.    These fundamental issues include: (i) whether Auer or the Hotel Entities breached the hotel construction contracts,[4] and (ii) whether mechanic's liens Auer filed against the Hotel Entities' properties are valid and may be foreclosed upon by Auer.

The eight lawsuits also include additional claims by both Auer and the Hotel Entities that arose during construction of the hotels.    Auer alleges that the Hotel Entities committed acts of fraud, conspiracy, breach of fiduciary duty, economic duress, libel, slander, business

---

[2] Six of the seven hotel properties are located in the Northern District of Texas and all of the Hotel Entities are headquartered there.

[3] The lawsuits include (i) Auer Corporation v. Decatur Hospitality, Inc., No. 09-01-00563 (9th Dist. Ct., Montgomery County, Tex.); (ii) Auer Corporation v. Borger Properties, Inc., No. 09-01-00565 (9th Dist. Ct., Montgomery County, Tex.); (iii) Borger Properties, Inc. v. Auer Corporation, No. 38,541 (84th Dist. Ct., Hutchinson County, Tex.); (iv) Borger Hospitality, Inc. v. Auer Corporation, No. 23,283 (132nd Dist. Ct., Scurry County, Tex.); (v) Borger Hospitality, Inc. v. Auer Corporation, No. 6,192 (118th Dist. Ct., Martin County, Tex.); (vi) Childress Hospitality, Inc. v. Auer Corporation, No. 9,738 (100th Dist. Ct., Childress County, Tex.); (vii) Auer Corporation v. Wheeler Hospitality, Inc., No. 09-01-00564 (410th Dist. Ct., Montgomery County, Tex.); and (viii) Perryton Hospitality, Inc. v. Auer Corporation, No. 11,945 (84th Dist. Ct., Ochiltree County, Tex.).

[4] The Hotel Entities allege that Auer breached contracts through its (i) abandonment of construction projects, and (ii) failure to pay numerous subcontractors, resulting in these subcontractors filing mechanic's liens against the Hotel Entities' properties.    Conversely, Auer claims the Hotel Entities breached the hotel construction contracts by (i) interfering with and delaying the construction process, (ii) refusing to pay Auer for materials and labor it provided, and (iii) failing to maintain a retainage fund in accordance with Texas law.

disparagement, and tortious interference with contract (collectively, "Auer's Additional Claims"). Although the extent of the allegations is unclear, the Hotel Entities claim Auer removed construction material, equipment, and furnishings from at least one hotel construction site.[5]

Four of the eight cases were subsequently consolidated in the 9th Judicial District of Montgomery County, Texas (the "Montgomery Litigation").[6] Default Judgment was entered in favor of Auer on February 12, 2010 in the Montgomery Litigation. Debtors filed a Motion to Set Post-Answer Default Judgment and Order Granting Motion to Dismiss Aside and for New Trial ("Motion for New Trial") on March 11, 2010.

On March 12, 2010, before the state court ruled on the Motion for New Trial in the Montgomery Litigation, each of the Hotel Entities filed a chapter 11 bankruptcy petition in the Bankruptcy Court for the Northern District of Texas, Amarillo Division ("the Northern District"). The Bankruptcy Court ordered the joint administration of the Hotel Entities' bankruptcy cases for procedural purposes only on April 20, 2010.

Debtors removed the Montgomery Litigation to this Court on April 9, 2010. The four non-consolidated cases between Auer and the Hotel Entities ("Amarillo Adversaries") were removed to the Northern District on April 9, 2010.

---

[5] In the Debtors' Objection to Motion for Mandatory Abstention and Remand (Doc. No. 15), Debtors state that they "have alleged that Auer has removed construction materials from Debtors' Hotel Properties and refused to return same to Debtors. In addition to monetary damages, Debtors' seek return of any of Debtors' property, now property of the several estates." The Court is not aware of the extent of these allegations. However, the allegations at least include claims that Auer removed elevators, electrical equipment, and various furnishings from the hotel owned by Borger Properties, Inc. in Hutchinson County. (*See* Doc. No. 1-18).

[6] The four consolidated cases are (i) Borger Hospitality, Inc. v. Auer Corporation, No. 6,192 (118th Dist. Ct., Martin County, Tex.); (ii) Auer Corporation v. Decatur Hospitality, Inc., No. 09-01-00563 (9th Dist. Ct., Montgomery County, Tex.); (iii) Auer Corporation v. Wheeler Hospitality, Inc., No. 09-01-00564 (410th Dist. Court, Montgomery County, Tex.); and Auer Corporation v. Borger Properties, Inc., No. 09-01-00565 (9th Dist. Ct., Montgomery County, Tex.). The consolidated case was titled Borger Properties, Inc., et al v. Auer Corporation, et. al.

Debtors filed a Motion to Transfer Venue (Doc. No. 3) of the removed Montgomery Litigation to the Northern District on April 13, 2010. Debtors ultimately seek to consolidate this adversary proceeding with the Amarillo Adversaries. Auer filed its Response (Doc. No. 9) in opposition to the Motion to Transfer Venue on May 11, 2010 and a Motion for Mandatory Abstention and Remand (Doc. No. 10) on May 13, 2010. Debtors filed an Objection to Motion for Mandatory Abstention and Remand (Doc. No. 15) on June 2, 2010.

On June 24, 2010, the Court held a hearing on both the Motion to Transfer Venue and the Motion for Mandatory Abstention and Remand. The Court continued the hearing and ordered the parties to submit briefing on whether a pre-existing state court action concerning the validity of a mechanic's lien becomes a core proceeding under 28 U.S.C. § 157(b)(2)(K)[7] upon the filing of a bankruptcy petition. The Court ordered the briefing primarily because of the discord between the well-settled case law interpreting 28 U.S.C. § 157(b)(1)[8] and the plain language of 28 U.S.C. § 157(b)(2)(K).[9]

On August 26, 2010, the Court resumed the hearing on the Motions for Transfer of Venue and for Mandatory Abstention and Remand. At the conclusion of that hearing, the Court ordered further briefing on the following three issues, which arose during the hearing:

---

[7] 28 U.S.C. § 157(b)(2)(K) provides: "Core proceedings include, but are not limited to . . . determinations of the validity, extent, or priority of liens."

[8] 28 U.S.C. § 157(b)(1) provides: "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1).

[9] Simply put, the discord between §§ 157(b)(1) and (b)(2)(K) arises because courts have consistently interpreted § 157(b)(1) to define a core proceeding as one that "invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of bankruptcy case." *Wood v. Wood (In re Wood).* 825 F.2d 90, 97 (5th Cir. 1987). Although a determination of the validity of a mechanic's lien in a pre-existing state court action fits squarely within § 157(b)(2)(K)'s list of core proceedings, such an action does not appear to fit within the contours of § 157(b)(1)'s definition of a core proceeding.

1. The effect of 28 U.S.C. § 1334(e)(1),[10] which places exclusive *in rem* jurisdiction over property of the estate in the "home"[11] bankruptcy court, on a state court's ability to exercise jurisdiction over this case;

2. Whether the Court may consider the existence of the automatic stay when analyzing 28 U.S.C. § 1334(c)(2)'s "timely adjudication" requirement;[12] and

3. Whether the forum selection clauses in each construction contract, which require all claims to be brought in a Montgomery County, Texas state court, prevent the Court from transferring this adversary proceeding to the Northern District.

Both parties filed their respective briefs (Doc. Nos. 45, 46) on September 9, 2010.

Auer's brief conceded the first two issues in Debtors' favor and withdrew Auer's Motion for

Mandatory Abstention and Remand:

> After considering the issue and reviewing the applicable case law, Auer believes that section 1334(e) does vest exclusive jurisdiction in the bankruptcy court to determine a lien interest in property of the estate.
> . . .
>
> Due to the grant of exclusive jurisdiction in the bankruptcy court to determine interest in property of the estate, mandatory abstention is inappropriate and the issue need not be addressed.

Def.'s Br. 1. Auer nevertheless maintains that transfer of venue to the Northern District is

impermissible.

As set forth below, the Court grants Debtors' Motion to Transfer Venue and denies

Auer's Motion for Mandatory Abstention and Remand.

## Analysis

28 U.S.C. §§ 1404(a) and 1412 provide the overall framework for changing the venue of

a bankruptcy case or proceeding initially brought in a permissible venue.  28 U.S.C. § 1404(a),

---

[10] 28 U.S.C. § 1334(e)(1) provides: "The district court in which a case under title 11 is commenced or is pending shall have *exclusive jurisdiction* . . . of *all the property*, wherever located, of the debtor as of the commencement of such case, and of property of the estate . . . ."  28 U.S.C. § 1334(e)(1) (emphasis added).

[11] The "home" bankruptcy court is the bankruptcy court in which the bankruptcy petition is filed.

[12] 28 U.S.C. § 1334(c)(2) requires mandatory abstention when, among other things, the case can be "timely adjudicated" in state court.

the general change of venue statute, provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought*." 28 U.S.C. § 1404(a) (emphasis added).  28 U.S.C. § 1412, the venue statute specifically applicable to bankruptcy cases and proceedings, provides: "A district court may transfer a *case or proceeding under title 11* to a district court for another district, in the interest of justice or for the convenience of the parties."  28 U.S.C. § 1412 (emphasis added).  Thus, §§ 1404(a) and 1412 promote the same basic tenets—the interests of justice and convenience.

Auer's argument focuses, however, upon the divergent language in §§ 1404(a) and 1412. In particular, Auer focuses upon the restrictive language that limits the applicability of each venue provision.  Auer claims that § 1412 is inapplicable to this case because, by its terms, § 1412 only applies to the main bankruptcy case and core adversary proceedings.  In support of its argument, Auer correctly cites this Court's previous holding that § 1412 only applies to core bankruptcy proceedings.  *See Longhorn Partners Pipeline, L.P. v. KM Liquids Terminals, L.L.C.,* 408 B.R. 90, 97 (Bankr. S.D. Tex. 2009).[13]  According to Auer, this case only involves non-core matters that fall under this Court's "related to"[14] jurisdiction.  Therefore, § 1412 is inapplicable and § 1404(a) governs the Court's venue analysis.

---

[13] The Court recognizes that there "is a split in authority regarding whether a motion to transfer an action that is 'related to' a bankruptcy action in another forum should be analyzed under § 1404 rather than § 1412." *Creekridge Capital, LLC v. Louisiana Hospital Center, LLC,* 410 B.R. 623, 628 (D. Minn. 2009).  "The courts in *Dunlap v. Friedman's, Inc.,* 331 B.R. 674, 677 (S.D. W.Va. 2005), and *City of Liberal v. Trailmobile Corp.,* 316 B.R. 358, 362 (D. Kan. 2004), provided extensive lists of the courts that have come down on either side of the issue and noted that there is even disagreement as to which position represents the majority viewpoint." *Id.*  As set forth below, the Court can resolve this matter under § 1404(a) and need not revisit its conclusion in *Longhorn Partners.*

[14] 28 U.S.C. § 157(a) provides: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or *related to* a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a) (emphasis added).  As discussed in more detail in footnote 9, a case is core if it "arises under title 11" or if it is "arising in . . . a case under title 11."  *Id.*  A case is "related to" a bankruptcy case where "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Farmland Indus., Inc.* 567 F.3d 1010, 1019 (8th Cir. 2009).  In most cases, the

Auer's argument next highlights the restrictive language in § 1404(a).  Unlike § 1412, which does not restrict the district to which a case may be transferred, § 1404(a) limits the transferability of a case to districts "where [the case] might have been brought."  28 U.S.C. § 1404(a).  Under § 1404(a), therefore, courts must take the additional step of determining whether the case could have originally been filed in the proposed transferee district.  This inquiry encompasses consideration of whether, at the time the lawsuit was filed, personal jurisdiction over the defendant, subject matter jurisdiction, and appropriate venue existed in the proposed transferee court.  *Am. Tel. & Tel. Co. v. Milgo Elec. Corp.*, 428 F. Supp. 50, 52 (S.D.N.Y. 1977).  Auer contends that transfer to the Northern District is improper because Montgomery County, Texas forum-selection clauses in each construction contract prevented the parties from originally filing lawsuits in the Northern District.

As set forth below, the Court finds (i) Auer's forum-selection clause theory is inconsistent with Supreme Court precedent, and (ii) transfer of this adversary proceeding to the Northern District is proper under § 1404(a).

### i.   Forum Selection Clauses do not Control Transfers Under § 1404(a)

Auer's forum selection clause argument is governed by the Supreme Court's *Stewart* decision.  *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988).  In *Stewart*, the Supreme Court considered the question of whether "a federal court sitting in diversity should apply state or federal law in adjudicating a motion to transfer a case to a venue provided in a contractual forum-selection clause." *Id.* at 24.  The Court held that federal law governs and, in so holding, established precedent that renders Auer's theory untenable.

---

distinction between core and non-core proceedings is critical because "[g]enerally, bankruptcy judges can issue final orders for core proceedings but can issue only reports and recommendations for non-core proceedings." *Longhorn Partners*, 408 B.R. at 95.

In *Stewart*, the petitioner filed a complaint in the Northern District of Alabama. *Id.* Relying on a forum-selection clause in the parties' contract, which designated Manhattan, New York as the proper forum, the respondent moved for a transfer of venue to the Southern District of New York under § 1404(a).[15] *Id.*

Ultimately, the Supreme Court rejected the theory that the existence of a forum selection clause governs the outcome of a motion to transfer under § 1404(a). *Id.* at 30. Instead, the Court held that a forum selection clause is a significant factor to consider in what must be a multi-factored, case specific inquiry under § 1404(a):

> A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors. *The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus.* In its resolution of the § 1404(a) motion in this case, for example, the District Court will be called on to address such issues as the convenience of a Manhattan forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power. The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties' private expression of their venue preferences.
> . . .
>
> The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of "the interest of justice." It is conceivable in a particular case, for example, that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause, whereas the coordinate state rule might dictate the opposite result. But this potential conflict in fact frames an additional argument for the supremacy of federal law. Congress has directed that multiple considerations govern transfer within the federal court system, and a state policy focusing on a single concern or a subset of the factors identified in § 1404(a) would defeat that command. Its application would impoverish the flexible and multifaceted analysis that Congress intended to govern motions to transfer within the federal system. *The forum-selection clause, which represents the parties agreement as to the most proper forum, should receive neither dispositive consideration (as respondent might have it) nor no consideration* (as Alabama law might have it), but rather the consideration for which Congress provided in § 1404(a).

---

[15] The respondent also moved, in the alternative, to dismiss the case for improper venue under § 1406. *Id.*

*Id.* at 30-31 (emphasis added) (citations omitted).

In this case, Auer's argument fails because it is wholly inconsistent with *Stewart's* holding. Without citing one case supporting its theory, Auer claims that venue transfer under § 1404(a) to the Northern District is impermissible because the construction contracts with the Hotel Entities designate Montgomery County, Texas as the only proper forum. *Stewart* makes clear, however, that the Montgomery County forum-selection clause is not the controlling factor but instead only a significant factor for courts to consider. Accordingly, the existence of the clause, alone, does not automatically render this a case that could not "have been brought" in the Northern District. *See* 28 U.S.C. § 1404(a).

Since Auer fails to raise any additional arguments concerning why this case could not have been originally brought in the Northern District, the Court finds that, so long as the Debtors satisfy the transfer factors, this is a case that can be transferred to the Northern District pursuant to § 1404(a). Additionally, because transfer is available under § 1404(a), the Court need not rule on Auer's claim that transfer is unavailable under § 1412 due to the alleged non-core nature of the claims at issue.

### ii. Transfer is Appropriate Pursuant to § 1404(a)

The Court must next consider whether it would be "[f]or the convenience of parties and witnesses [and] in the interest of justice" to transfer this adversary proceeding to the Northern District. *See* 28 U.S.C. § 1404(a). "The purpose of the § 1404(a) inquiry is 'to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 593 (N.D. Tex. 2003) (quoting *Andrade v. Chojnacki*, 934 F. Supp. 817, 832 (S.D. Tex. 1996)). As the movants for the venue transfer, the burden is on the Debtors to demonstrate that transfer to

the Northern District is appropriate. *Sabre Tech., L.P. v. TSM Skyline Exhibits, Inc.*, 2008 WL 4330897, *8 (S.D. Tex. 2008).

As set forth below, the Court finds that transfer of this adversary proceeding to the Northern District is proper under to § 1404(a).

### a.   Transfer to the Northern District is in the Interest of Justice

The Fifth Circuit has held that the "interest of justice" inquiry involves considering four factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* at *9 (quoting *In re Volkswagen*, 371 F.3d 201, 203 (5th Cir. 2004)). As discussed below, two of the factors are neutral and two of the factors favor transfer to the Northern District.

### i.   Administrative Difficulties Flowing From Court Congestion

The Debtors do not claim that the extent of the "court congestion" due to docket activity in the Southern District differs from that in the Northern District. Thus, on this point, the first factor is neutral.

The Debtors also argue, however, that administrative efficiency is gained from resolving this adversary proceeding in the same tribunal as that which is handling both the Amarillo Adversaries and the Hotel Entities' main bankruptcy cases.[16] *See id.* ("Allowing the bankruptcy court to adjudicate the core claims involved in this case, as well as the other related claims, promotes the efficient administration of the bankruptcy estate."). The administrative gains are particularly noteworthy in this case because, although particular facts concerning the

---

[16] The Debtors cite *Sabre Tech.* in support of their contention that administrative efficiency may be considered under the "court congestion" factor. *See Id.* Since increased efficiency will necessarily decrease court congestion, the Court agrees with *Sabre Tech.* and will consider administrative efficiency.

construction of each hotel may differ, the fundamental legal issues are nearly identical to those present in the Amarillo Adversaries. *See DataTreasury Corp.*, 243 F. Supp. 2d at 594 ("Since *Continental Grain*, a number of courts, including the Fifth Circuit, have held that the existence of related litigation in a transferee court is a factor that weighs strongly in favor of transfer) (citing *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528-29 (5th Cir. 1988) (additional citations omitted). Similarly, many of the factual issues concerning Auer's Additional Claims will overlap with disputed facts in the Amarillo Adversaries.

Accordingly, the Court finds that the first "interest of justice" factor favors transfer to the Northern District because the Amarillo Adversaries and the Hotel Entities' main bankruptcy cases are pending there.

### ii.  The Local Interest in Having Localized Interests Decided at Home

The "local interest in having localized interests decided at home" also favors transfer to the Northern District. First, six of the seven properties owned by the Hotel Entities are located in the Northern District.[17] *See Sabre Tech.*, 2008 WL 4330897, at *9 (relying on the principal place of business of the parties when determining the extent of the localized interests in the lawsuit). Furthermore, because the allegations in this proceeding, the Amarillo Adversaries, and most of the related subcontractor lawsuits arose primarily out of events that transpired at the construction sites, the location of six of the hotels in the Northern District strongly favors transfer to the Northern District. *See In re Volkswagen of America, Inc. ("Volkswagen II")*, 545 F.3d 304, 317 (5th Cir. 2008) (en banc), *cert. denied*, --- U.S. ----, 129 S. Ct. 1336, 173 L. Ed. 2d 587 (2009) (finding localized interests strongly favored transfer where, among other things, "the accident occurred in the Dallas Division, the witnesses to the accident live[d] and [were] employed in the

---

[17]  Debtor Borger Hospitality, Inc. owns one hotel property located in Martin County, Texas, which is within jurisdiction of the Western District of Texas.

Dallas Division . . . [and] the wreckage and all other evidence [was] located in Dallas County."). Finally, the location of all the Hotel Entities' headquarters, which is within the Northern District, favors transfer to the Northern District. *See Id.*

The only fact supporting Auer's position is Auer's location in Montgomery County, Texas. Other than the decisions that Auer made from its Montgomery County location, all other events and decision-making occurred outside of the Southern District. Accordingly, the Court finds that the "local interest in having localized interests decided at home" favors transfer to the Northern District.

### iii.   The Familiarity of the Forum With the Governing Law

The third factor, the Court's familiarity with the governing law, is neutral. This adversary proceeding involves causes of action based solely upon state law, most of which are regularly resolved through adversary proceedings before bankruptcy courts. The Court finds that this forum and the Northern District are both sufficiently familiar with the governing law to properly resolve this adversary proceeding. *See also Sabre Tech.*, 2008 WL 4330897, at *9 (stating that the Northern and Southern Districts were "equally familiar with Texas law.").

### iv.   Avoidance of Unnecessary Conflict With Foreign Laws

Since this adversary proceeding and the Amarillo Adversaries are governed by Texas law, the "avoidance of unnecessary conflict with foreign laws" factor is inapplicable and, therefore, neutral.

### b.   The Convenience Prong Favors Transfer to the Northern District

Section 1404(a) next provides that courts must consider the convenience of the parties and witnesses when ruling on a motion to transfer venue. 28 U.S.C. § 1404(a). Courts conduct the convenience inquiry by considering a number of private interest factors:

These factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen,* 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 258 n. 6, 70 L.Ed.2d 419 (1981).

*Sabre Tech.* 2008 WL 4330897, at *10.

This adversary proceeding is an integral part of a larger web of closely interrelated lawsuits between the Hotel Entities, Auer, and numerous subcontractors and suppliers. The fundamental issues underlying these lawsuits involve determining (i) who is responsible for the disruption of the construction projects, and (ii) the extent of the damages owed to those who played a role in the construction. This point was previously made clear by Auer in its Motion to Transfer and for Stay of Related Cases ("Auer's Motion to Transfer") that was filed pre-bankruptcy before the Texas Judicial Panel on Multidistrict Litigation on December 22, 2009. (*See* Debtors' Ex. 25). In Auer's Motion to Transfer, Auer stated that 33 lawsuits were filed involving the Hotel Entities, Auer, and various subcontractors and suppliers. *Id.* Auer sought transfer of the 33 cases to one single pretrial court for coordinated pretrial proceedings. *Id.* In support of its motion, Auer made numerous statements indicating that these cases are closely interrelated:

> All these cases involve the same question – what do the hotel owners owe those who built the hotels?
> . . .
>
> All the cases involve the same basic issue – who owes what to whom from the construction of these hotels?
> . . .
>
> These actions resemble the classic clusters of cases that have benefited from the multidistrict litigation procedure.
> . . .

All of the instant cases involve the same basic fact questions and, therefore, they are related.

*Id.*

Although the above statements were made by Auer in connection with a much broader transfer motion, they are equally applicable to the transfer question in this adversary proceeding. This proceeding and the Amarillo Adversaries, which involve allegations between the general contractor and the hotel owners, are at the very heart of the overall web of related construction lawsuits. It is essential, therefore, that this proceeding and the Amarillo Adversaries are resolved in the most efficient, convenient, and cost-effective means possible. This will be accomplished by transfer of this proceeding to the Northern District, which is where the Amarillo Adversaries and Debtors' main bankruptcy cases are already pending.

Additionally, the evidence presented by the Debtors reinforces the points made in Auer's Motion to Transfer and leads to the conclusion that the Northern District is a much more convenient venue for litigating this adversary proceeding. For instance, the seven construction contracts at issue in this case and in the Amarillo Adversaries contain nearly identical terms. Given the close similarity, efficiency is gained when one court interprets all seven contracts. Likewise, it is more convenient for the parties to litigate the meaning of the contracts and the questions surrounding any breaches thereof in one venue.

The evidence also indicates that many of the subcontractors and suppliers provided labor and supplies to more than one of the hotel projects. Thus, not only are the Hotel Entities and Auer the same litigants in this proceeding and in the Amarillo Adversaries, but many of the same witnesses (i.e. the suppliers and subcontractors) could potentially be called in this proceeding and in the Amarillo Adversaries. It is not only more efficient but also more convenient for these potential witnesses to testify in one venue.

Furthermore, the close proximity of the Northern District to the significant persons and events in this case makes it a more convenient venue than the Southern District. Six out of seven hotels are located in the Northern District. *See Sabre Tech.*, 2008 WL 4330897, at *11 ("[T]he place of the alleged wrong is one of the more important factors in venue determination."). All of the Hotel Entities are headquartered in the Northern District and the vast majority of suppliers and subcontractors are located within or near the Northern District. In fact, with the exception of Auer's employees in Montgomery County, every relevant party and witness is located in or near the Northern District. Similarly, but for the events which transpired in Auer's Montgomery County office, nearly every relevant event (including the most significant events) occurred within or near the Northern District. Thus, most of the sources of proof are located within or near the Northern District. *See Id.*

In sum, numerous case-specific factors support the conclusion that it is more convenient to litigate this adversary proceeding in the Northern District.

### c.  The Forum Selection Clause does not Alter the Court's Conclusion

The Court further notes that, in conducting the transfer analysis, the Court has remained mindful of the significant weight that must be afforded to the Montgomery County forum selection clause under *Stewart*. The Court finds, however, that important countervailing factors outweigh the forum selection clause. First, 28 U.S.C. § 1334(e)—which places exclusive jurisdiction over property of the estate in the "home" bankruptcy court—provides strong support for transfer to the Northern District because this case involves determining the validity of liens asserted against the most significant property of the Debtors' bankruptcy estates. Since all other courts lack *in rem* jurisdiction over a major portion of this adversary proceeding, it serves both convenience and justice to transfer this case to the only court with jurisdiction to resolve all the

claims.  Second, as discussed above, the existence of related litigation in the Northern District "weighs strongly in favor of transfer."  *See DataTreasury Corp.*, 243 F. Supp. 2d at 594 ("Since *Continental Grain*, a number of courts, including the Fifth Circuit, have held that the existence of related litigation in a transferee court is a factor that weighs strongly in favor of transfer).  Third, transfer to the site where the significant events occurred and where the evidence is located is strongly favored under *Volkswagen II*.  *See Volkswagen II*, 545 F.3d at 317.  Accordingly, the Court finds that the significant weight attributed to the forum selection clause is outweighed by significant countervailing factors favoring transfer to the Northern District.

**Conclusion**

After considering the facts specific to this adversary proceeding, the Court concludes that it is in the interest of justice and serves the convenience of the parties and witnesses to grant Debtors' Motion to Transfer.  A separate order will be issued.

October 1, 2010

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE